We will move to our second case this morning, which is Cutchin v. Robertson. I think we have both counsel. Mr. Shoulders, you may proceed. Can you hear me? I can. And thank you. May it please the court, I am Patrick Shoulders, and I'm honored here today to represent the plaintiff appellant Jeffrey Cutchin, who in February 2017 tragically lost his wife of more than 30 years and his only child in an automobile accident in southern Indiana. The appeal we bring you today... I have a preliminary question which may help all of us, I hope. If we agree with you on the merits of the second question that Mr. Cutchin's claim falls within the scope of the act, then do we need to reach the first question? In other words, can the fund contest the act's applicability once the court has approved the settlement between the plaintiff and the physician clinic? Absolutely, Your Honor. If you agree with me on either issue, I believe the only thing that remains is for the trial court to determine the amount of damages here. The second question goes to the breadth of the act. The first question, procedurally, would also preclude the fund's argument here by simply following the letter of the law which says that when a settlement is reached with a qualified provider, the only thing that remains is the determination of excess damages. Briefly, the facts are not contested here. Sylvia Watson, who for many years was the patient of an anonymous healthcare provider in the act, one of the benefits of the act is that the doctors get to remain anonymous. Sylvia Watson was treated by this doctor who prescribed not fewer than eight different prescriptions for a variety of medical maladies which she suffered. One of those prescriptions was an opioid. Several of the prescriptions were muscle relaxants. Shortly before this accident, Sylvia Watson's granddaughter Brandi Mayer witnessed her grandmother take two of these pills from a prescription bottle and then get in the car and begin to drive. As they approached the intersection, Sylvia Watson screamed that she could not stop and Brandi Mayer watched her grandmother attempt to physically lift her foot off of the accelerator which she was unable to do. She broadsided the action vehicle and killed the wife and the daughter. Now, forgive me, Mr. Shoulders. We really okay. We know from Wisniewski that there are at least some instances in which a physician and his insurer may settle with a plaintiff, but the claim will nonetheless fall outside the scope of the act and the fund will therefore be exempt from a claim for excess damages. So why doesn't that open the door to the fund's argument here? Your Honor, I'm glad you've mentioned Wisniewski since it's the case that the fund has said is most closely on the facts here. The fact is Wisniewski provides absolutely no support to the fund and there is no case since 1975. No case nor any language in the act which supports their position. Wisniewski said this and I quote, an agreement to settle by payment with an entity who has not paid into the fund and is not an insurer as defined by the act does not meet the requirements for access to the fund. Wisniewski was a settlement with a non-qualified provider, a insurance company who had not paid the surcharge or the premium, if you will, for excess insurance coverage. It provides no support for the fund's position here. The fund cannot cite to you a case where a claim was brought under the act, processed according to the act, settled with a qualified provider under the act with medical protective insurance or a qualified insurance company under the act which had paid a surcharge for excess coverage and then the fund was allowed after the settlement was concluded and the doctor enjoyed all of the benefits of the protections, the fund would now say to you it can litigate the applicability of the act. That is impossible. It would place every plaintiff in a box. We accept the $250,000 and payment must be made. Indiana court cases are very clear. You can't take the payment under a loan receipt and say, well, let's see if the act applies. Payment has to be made. Releases are exchanged. The dismissal of the doctor is accomplished. And now we're told, well, you've got a negligence case, but the million-dollar excess is not available. It simply can't operate that way. So your bottom line, your absolute bottom line would be that the fund was allowed to intervene in this case and the fund wanted a determination as to whether the act applied. The fund and the other insurers could have pursued that prior to any settlement just as the parties did in the West case. So that's where you are. Precisely, Your Honor. In fact, the West case is most illustrative of that point. There are hundreds of cases where the plaintiff does not want to be bound by the ax cap, where the fund and the plaintiff have joined together, where the defendants, the medical insurers do not want to pay out. They believe it's a case for the general liability carriers. The fund and the medical malpractice insurers join and you see, Your Honor, the fund is on notice and aware of every claim filed under the act because the complaint has to be filed with the Department of Insurance. If the medical insurers believe the case is worth at least $125,000, the fund gets notice under the act. They are to send notice under 34-18-9-2 when they reserve the case at $125,000. The fund has ample notice to protect itself. What it cannot do is allow the insurer to settle for the act to operate for the $250,000 to be paid and the doctor to be released and then assert that the act never applied. I have to question that, Mr. Shoulders. I don't know how the fund can force the healthcare providers insurer to do anything, right? The fund doesn't control the healthcare providers insurer and what you're asking us to do is to accept the proposition that the healthcare providers insurer and the plaintiff can bind the fund to the act to this fact pattern when the fund has asserted from the get-go that the act does not apply. And I don't know that there's any support in Indiana law for that proposition, but that's what you're asking us to accept. There's all kind of support in Indiana law for that proposition and that is precisely the way the fund operates. The complaint is filed with the department. The medical insurers then are served by the Department of Insurance. Medical panels are formed. The doctors have the benefit of a review by three doctors of like practice, at which time there's a finding of whether there's malpractice or not. And then the insurance companies and their doctors have the right to go to court and contest it. But the point you make in Remert-Mortel, the fund argued the unfairness of the claimants and the providers and the malpractice insurance, quote, being able to make excess payments by entering into settlements. The court said despite our sympathy for that position, those arguments should be directed to the legislature because there's a trade-off here. In exchange for limited coverage, for caps on damages, for the contributory negligence as a defense, for anonymity, for the review by three doctors before you can proceed, there are trade-offs, one of which is assured liability. If I could interrupt for a minute. Are those cases concerning the issue of whether the Act applies at all or are they cases that entail disputes about whether there was malpractice? There's a difference between those two things. One is sort of categorical. The other is fact-bound. And the law provides that when the department receives a complaint, again, filed with the insurance department, it may pay for counsel out of the surcharge. It may go to court for preliminary determinations of law. It has done that many times. If the fund wished to contest that this was not a case under the Malpractice Act, they had ample time to do that all the way up to the point where they did not object to the settlement here. They could have contested that in a declaratory judgment at any time. They cannot once liability is established. And that is the one sentence in this. If I don't do anything else in this appeal, I need to make sure the court is thoroughly aware of 34-18-15-3, the entire statute that deals with excess coverage. That states in approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established. That's the liability of the health care provider on a claim under the Act. That means the liability for damages for $250,000 is established when that settlement is reached. The only thing that remains is $2,501 to $1 million. That's the only issue that remains. Well, was that issue litigated at the stage in court in which the settlement was being approved? Was the applicability of the Act litigated? It was not, because it didn't have to be. The provider and the plaintiff agreed to settle their claim under the Act. At that point, when the funds took no action to preclude that settlement, there is no provision in this Act that allows them, as a separate entity, to contest liability. It's like any primary in excess. Once primary liability is established, excess is triggered. Liability is no longer a consideration. I thought the court sort of kept the fund in the background during all of this litigation early on. I know that it went to a magistrate judge for a mediation, etc. It seems like the fund kept saying this is not under the Act and kept asserting that argument and kept being pushed to the background while the plaintiff and the providers duped it out over how much it was worth. On the contrary, the fund intervened. It didn't have to intervene. It intervened in the litigation. I understand it intervened in the litigation. That's why the fund is here. At every juncture, when it asserted the inapplicability of the Act, that argument got put on the back burner while the settlement negotiations between the plaintiffs and the providers were ongoing. The fund kept trying to assert this argument. Actually, at the critical moment, before the money was to change hands, before the plaintiff's remedy was locked into the Act, the fund said, and I quote, the PFC has no objection to the dismissal of the doctors. The fund had no objection to the $250,000 being paid and the doctors being dismissed. Provided that the argument about the applicability of the Act was reserved and could be asserted and the court accepted that proviso, right? It doesn't say that. The fund always maintained, like any defendant would always maintain, that I have a great defense. That doesn't bind anybody. I believe we're entitled to a million dollars. They may think we're only entitled to another $200,000. That's a claim. It has no force in effect to bar anyone. The Act operates independent of what they may claim. They could have stopped this settlement, but they can't stop it once my rights, my client's rights against that doctor are gone, Your Honor. We've released that doctor under the parameters of this Act. I get that. With 20 seconds to go, let me say, we don't believe you even need to get to the second issue, but if you get to the second issue, the text of this Act, the definitions of this Act, the definition of patient, and the Spangler v. Bechtel case where the Supreme Court of Indiana said it is grounds for an expansive interpretation to control malpractice claims, you should bring everything under the Act, not claims outside. The fund's argument, I guess my time is out here, but the fund's argument would be this. If Sylvia Watson sues the doctor who was released here, she's limited to a million dollars. A third party injured by the same conduct can get $15 million because that claim's not limited. That flies into the face of the policy of the Act. It flies into the language of the Act, and it's against common sense. Thank you. Well, Mr. Shoulders, you ended with an answer to my first question. Okay. All right. And I'll give you a minute in rebuttal. We kept you at the virtual podium with questions. Mr. Blalock, it's your turn. Thank you. May it please the Court, I'm here on behalf of the Indiana Patients' Compensation Fund, and I plan to address three issues. First, the PCF was not foreclosed from challenging applicability of the Act based on either the Medical Malpractice Act Section 34-18-15-3 or the Memorandum of Settlement. Second, as tragic as the accident was, Mr. Kutchin and his late wife and daughter were not patients within the meaning of the Indiana Medical Malpractice Act, and as such, they did not satisfy the statutory prerequisites for accessing the fund for excess damages. And then lastly, in a new argument raised in the reply brief, the PCF is not an excess insurer in the traditional sense, and so it's not bound by the settlement under that analogy between the provider carrier and the Kutchins. Okay. Let's see if you can help me with this. You want to treat the Act's applicability as a jurisdictional question, but isn't it really a question that goes to the existence of liability and therefore the merits of the malpractice claim? As I read cases like Webb and Cram, a physician may or may not owe a duty to a third party depending on the foreseeability of injury to a third party and public policy considerations, but those are matters that are intertwined with liability, and under the expressed terms of the statute, doesn't the settlement between the plaintiff and the physician foreclose any further inquiry into liability? And just let me add that you have disappeared from my screen, and Mr. Schultz is there. Now I see you. That was disconcerting. Because I want to watch your body language. Yes. Let me speak to, I think, to make sure I understand the question. If there is a qualified provider who settled a claim that falls within the purview of the Act, which is not what happened here, and there is a settlement agreement, then yes, liability is established, causation and proximate cause, there's some nuances to that, but as a general proposition, I would say yes. But much like in several of the cases that we've cited, and I'll talk about the Mortel case here in a little bit, we have the ability to challenge whether or not the statutory requirements are met in the first instance. When we raise subject matter jurisdiction, there are cases, for example, if a case falls under the Medical Malpractice Act and a plaintiff files in court and tries to pursue the case there, the trial court, or in this case the district court, does not have subject matter jurisdiction. So in that sense, it's a jurisdictional question and cannot be waived. You see, here's my difficulty. The fund had intervened in the case prior to settlement. If there is a doubt as to whether the Act applies, the fund could have corralled the physician and the clinic and their insurer to seek a determination on that point before anyone settled. Your Honor, I believe that's exactly what we did. We moved to intervene. We learned about the case after the amended complaint was filed. The notion that we have an obligation to monitor and intervene and the hundreds of cases that are filed every year is just not realistic or what happens. But we learned about this case after the amended complaint was filed. We then found out what the position of both parties was and said we're going to intervene. In our intervention, we said we don't believe that the Act applies. Right on the heels of that was a settlement conference. We moved the court to be excused from the settlement conference because we didn't believe we had the statutory ability to even make a payment. Our view is if the statute doesn't authorize it, we can't do it. And the statute doesn't authorize it because it's not a patient. So the judge overruled that. We went to the settlement conference by order of the court. We signed and all the district court correctly says we acknowledge the memorandum of settlement. I'm not allowed to tell you what transpired at the settlement conference, but hypothetically, we don't agree that this was covered with the Act. We were there all day and we didn't sit silent. So we acknowledge the settlement. There is not a single thing in the statute that requires us to affirmatively stop a settlement if we don't believe these are covered by the Act. The Mortel case, which I was going to Murphy v. Mortel, and this is I think constructive. First of all, there are a lot of cases where the PCF has challenged applicability of the Act after a settlement agreement. There's not a single case under Indiana law that said we can't do it, which is this would be the first court to do so. In Murphy v. Mortel, a child was molested while they were in the hospital. There was a settlement agreement with a qualified provider. The plaintiff's counsel would say, well, wait a minute, it was under a general liability policy. And that is correct. But the court analyzed the issue as if it was a medical malpractice claim. So there was a settlement agreement over a child getting molested at a hospital. There was then an excess damages claim, exactly what you have here under 34-18-15-3. Now at that point, the plaintiff would say, well, that's enough to bind the PCF. Period. But the court in Murphy allowed the PCF to challenge its obligation to pay. And what the court did is it looked at the definition of health care in the Act, which is one of the multiple definitions in here. And it's an important definition for purposes of our analysis because health care is defined as follows. It means an act or treatment performed or furnished or that should have been performed or furnished by a health care provider to or on behalf of a patient during the patient's medical care treatment or confinement. And that's 34-18-2-13. Now the court in Murphy said, well, the molestation was not an act or treatment that was to benefit the patient, obviously quite obviously. But that ruling rests on only one part of the definition of health care. The definition, as I just mentioned, requires it to be against a patient. So what Murphy teaches us is that a court can evaluate whether the health care is at issue after a settlement between a plaintiff and a qualified provider. And for there to be health care, that brings a claim within the Act, there's got to be a patient. And there isn't one here. So we're really happy. Isn't treating the settlement with the physician and clinic as conclusive of liability consistent with the balance of interest that the legislature struck? Mr. Cutchin is subject to the caps on damages, for example. But having settled with the physician and the clinic, he shouldn't have to start from scratch and establish liability in order to recover from the fund, should he? Well, he has, Your Honor, he has no independent claim against the fund. And if that I would acknowledge if Your Honor finds that Mr. Cutchin was a patient under the Act, and if there certainly was a qualified provider, then we are not going to challenge liability. But neither Mr. Cutchin is not a patient. And I want to sort of bring back again to Murphy versus Mortel. The analysis is the same. Was there health care? That's what was issue in Murphy versus Mortel. It was just a different part of the definition. We focus on the definition of patient. And there was no patient. And I can get into the details of that. The second point in Dillon versus Callaway, that case did involve a plaintiff settling with a qualified provider. And the PCF was allowed to challenge whether or not it was, quote, health care, part of that definition. And the court concluded it was. So when plaintiff says we can't point to a case in which this challenge has happened with a qualified provider and a qualifying plaintiff, that's not accurate. Dillon versus Callaway is that case. We get to challenge that. We challenge it pretty regularly. And I will say the notion that we sat on our rights and are somehow bound by this settlement agreement. I'll point the court to preferred professional insurance versus West, in that the Court of Appeals in Indiana was reciting some of the procedural background. And one of the issues was could the plaintiff in that case file a declaratory judgment action? And the answer was yes. And the court said the following. This is what the Court of Appeals says. As noted by the Marion County Trial Court, a resolution of the applicability of the MMA by declaratory judgment is necessary in order for any possible resolution by settlement to occur. So that's out there. So we intervene. We say we don't think this is covered by medical malpractice. We don't want to participate in the settlement agreement. Under those circumstances, the plaintiff made the decision to settle while this question was pending. Not us. And we can't be sort of, I don't want to say gotcha, but we can't be bound by the settlement agreement to which we consistently said is not covered by the Act. So I recognize the predicament therein, but it was not one of our creation. And we have no affirmative obligation in any statute to object to a settlement between a plaintiff and a qualified provider. That's not what Indiana 34-18-15-3 says. But the Court kind of derailed procedurally when the District Court forced the settlement negotiations ahead of any determination about whether the Act applied. I mean, that's one way to look at it. Yes. I mean, we came in. We said this doesn't apply. I mean, it didn't take the District Court terribly long to resolve the issue once we litigated it. But then we find ourselves saying that we expressly assented, and that's what the argument is by Kutchin, to the memorandum of settlement. We did no such thing. We acknowledged it. And we have absolutely no statutory right to stop a settlement. And we have absolutely no statutory duty to object to a settlement at that point in time. We don't usually, and this is a prime example, we don't usually know about anything that's happened with a case. We get delivered judgments. Case went to trial, here's a judgment. We get delivered settlements or, I'm sorry, we get delivered new petitions. Here's a claim for excess damages. We cannot possibly monitor, we note in our brief, 777 cases filed in 2018. We would have to staff up and intervene in all these cases and discovery as they go along if we don't think they're covered. That would increase costs under the medical malpractice. What ordinarily happens in Indiana State Court when there's a categorical question like the one presented here? It's not a question about whether the provider was medically negligent under the standard of care. It's a question about whether the act applies at all. How are those questions litigated? I understood, I guess, from the briefing in the case that that would have to be forced to the surface by a declaratory judgment. That is correct, Your Honor. There's also under Chapter 11 of the Medical Malpractice Act, you can file a section we call Section 11 pleading, which is you can bring issues to the court's attention while the case is pending before the medical review panel. Now, there's an interesting ideological or theoretical question there is if it doesn't fall under malpractice, do you have the right to bring it under that section? Usually, that's how it comes about. The other way it comes about is as it came about in West, as it came about in GF, as it came about in a lot of other cases where somebody will file a declaratory judgment. We got an email in a case the other day from a plaintiff saying, I've got a case. I'm about to settle. Should I settle? Will you contend that this is not malpractice? Those are the kinds of questions that we found out about this case incidentally after the amended complaint. Well, we need to intervene. That's the most efficient way for us to do it. We want to get these issues resolved. It seems clear to me from cases like Cram and Manly that Mr. Kutchin's claim is a claim for medical malpractice. Every third-party case like this one turns on its own facts. But the factual scenario here seems quite close to the facts at issue in those cases. If we treat this as a medical malpractice claim, then ought it not fall within the Act's claim of any kind language? I mean, wouldn't the legislature have meant for any claim of medical malpractice to fall within the scope of the Act? Respectfully, no, Your Honor. First of all, this was covered under the Indiana Medical Malpractice Act. It just talked about the issue of duty. Manly, the only reason that the court concluded this was medical malpractice is because they found the plaintiff waived the issue because they followed through the Medical Malpractice Act until the point that they thought they had a statute of limitation issue and then changed course. Manly's holding has been distinguished or I don't mean to say it's a holding, it's a dicta in both West and the West. Looking at West's case, for example, the court expressly rejected, respectfully, Judge, the point that you just made which is to say, if you say the or otherwise language or claim of any nature is the guiding principle, you can wipe out the rest of that definition of patient because it doesn't matter if you're derivative, it doesn't matter anything. All that you have to have is an act of malpractice and that's not what the cases say. West, Gall, specifically say I see my time is up. You may finish your sentence. Thank you. West and Gall specifically say that the line of demarcation for medical malpractice in Indiana and this is not a controversial proposition, is unknown third parties. In this situation it's unfortunately the Cutchins, in West it was West and in Gall it was a probation officer who was shot by somebody receiving medical, mental health treatment. Thank you, Your Honor. We would ask Well, West facts are so different. The court there no matter what, agreed with the plaintiffs who wanted to pursue their negligence claim outside of the acts limitations and I think West is an outlier, but okay that's what I think. All right. Thank you, Your Honor. Mr. Childers, your time has expired, but you may have a minute in rebuttal. And I'll go very quickly. Thank you, Your Honor. Starting with the last comment, certainly West is an outlier based upon the text the text of the act which defines a patient as a person not a patient, a person who has a claim of any kind contending that a doctor is guilty of substandard care. That's what the definition says and that's what Jeff Cutchins' case is. There's some language that comes before that that refers to receipt of health care from a health care provider under a contract express or implied and your client doesn't stand in that position. We have to read the language as a whole. It says and includes a person having a claim of any kind whether derivative or otherwise. So it would say patient includes a person having a claim of any kind. I may believe that the text couldn't be clearer and the language is unequivocal. That's number one. Number two, the invitation to cite you one case where a doctor and a qualified insurance company settled and the court allowed the fund to contest the applicability act was not satisfied here. The closest is Dillon v. Callaway and there Judge Shields in a concurring opinion said this is easy. Once there's a settlement, there's no contesting anymore of the applicability of the act because liability under the unequivocal language of the statute is established. That is liability under this act is established when the $250,000 is paid. That happened here. What the fund invites you to do is to make every plaintiff in those 777 cases come to the court and ask for a declaratory judgment on the off chance that before they release that doctor, there could be some claim that they can't get to the million dollars worth of damages. That's what the fund is asking you to do is build into this act where you will not find it a requirement that we get the court to sign off on the acts applicability. It is not here. They are an excess insurer. Their liability is fixed when the primary insurer pays. Thank you. Thank you very much. Our thanks to both counsel. The case is taken under advisement and before we move to our third case this morning, we will take a 10-minute recess. Thank you, Your Honors. Thank you.